IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON MENDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-cv-1241-S-BN |
| | § | |
| DALLAS COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER TO STAY
AND ADMINISTRATIVELY CLOSE CASE**

*Pro se* plaintiff Jason Mendez has sued Defendant Dallas County under Title II of the Americans with Disabilities Act ("ADA"). *See, e.g.*, Dkt. No. 8.

The presiding United States district judge has referred Mendez's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from the presiding United States district judge.

Mendez paid the filing fee and served the County, which then moved to dismiss this lawsuit for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that abstention under *Younger v. Harris*, 401 U.S. 37 (1971), is required because "Mendez's claim regarding alleged violations of the [ADA] is inextricably intertwined with an on-going state criminal prosecution," Dkt. No. 35.

In response to this argument, the undersigned entered a memorandum opinion and order questioning whether abstention was a basis for dismissal under Rule 12(b)(1) and requiring the parties to file briefs to show cause why this lawsuit should

not be stayed, rather than dismissed. *See Mendez v. Dall. Cnty., Tex.*, No. 3:25-cv-1241-S-BN, 2025 WL 1994402 (N.D. Tex. July 17, 2025) [Dkt. No. 40].

Both sides responded.

And, for the reasons set out below, the Court will stay and administratively close this civil proceeding.

**Legal Standards**

"Federal courts do not abstain … because they lack jurisdiction; rather, [ ] abstention 'reflects a court's prudential decision not to exercise [equity] jurisdiction which it in fact possesses.'" *Weekly v. Morrow*, 204 F.3d 613, 614-15 (5th Cir. 2000) (cleaned up); *see also New Orleans Pub. Serv., Inc. v. City Council of New Orleans*, 491 U.S. 350, 359 (1989) (Federal courts possess "discretion in determining whether to grant certain types of relief – a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted. Thus, there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is the normal thing to do. We have carefully defined, however, the areas in which such abstention is permissible, and it remains the exception, not the rule." (cleaned up)); *see, e.g., Stinson v. McGinnis*, No. 3:23-cv-810-M-BN, 2024 WL 4152703 (N.D. Tex. Aug. 16, 2024), *rec. accepted*, 2024 WL 4151175 (N.D. Tex. Sept. 11, 2024) (denying dismissal under Rule 12(b)(1) based on *Colorado River* abstention).

But, "[j]ust as [federal courts] must ensure the existence of [their] subject-matter jurisdiction, [they] must also ensure that exercising it does not offend

principles of 'Our Federalism.'" *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1090 (5th Cir. 2023) (cleaned up).

In this regard, under *Younger*, a federal court should abstain from exercising its jurisdiction when to do so would result in the interference in certain, select state proceedings.

But *Younger* abstention "applies only to three exceptional categories of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and pending civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (cleaned up).

As to *Younger*'s application to ongoing criminal prosecutions, this Court should abstain except in the most extraordinary circumstances and on a clear showing of both great and immediate harm. *See Burgett v. State of Tex.*, No. 7:04-cv-227-R, 2005 WL 473680, at *1 (N.D. Tex. Feb. 28, 2005) (collecting cases); *Younger*, 401 U.S. at 43-45; *cf. Burton v. Procter & Gamble Co.*, No. 3:17-cv-1190-B-BN, 2018 WL 1115138 (N.D. Tex. Jan. 30, 2018) (noting *Younger*'s application to ongoing state proceedings to determine competency), *rec. accepted*, 2018 WL 1115363 (N.D. Tex. Feb. 27, 2018).

The requirement that a plaintiff prove "extraordinary circumstances" to obtain federal relief is grounded in the principals of comity and federalism. *Younger*, 401 U.S. at 44. And those principles inspired the policy of preventing federal courts from issuing injunctions or declaratory judgments while state court proceedings were ongoing. *See Kolski v. Watkins*, 544 F.2d 762, 766 (5th Cir. 1977).

The *Younger* doctrine requires that federal courts decline to exercise jurisdiction over a state criminal defendant's claims when three conditions are met: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Defender Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (cleaned up; citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)); *accord Hood*, 822 F.3d at 222-23; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that the state procedures will afford an adequate remedy."); *Kugler v. Helfant*, 421 U.S. 117, 124 (1975) ("[O]rdinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights"); *Moore v. Sims*, 442 U.S. 415, 425-26 (1979) ("Certainly, abstention is appropriate unless state law clearly bars the interposition of the constitutional claims."); *Gates*, 885 F.3d at 880 ("The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court." (citing *Moore*, 442 U.S. at 425)).

And, faced with the choice under *Younger* of staying or dismissing without prejudice, it appears that, out of an abundance of caution, the better course is to stay. *See Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013) ("[B]ecause his claims may become time-barred by the time the state prosecution has concluded, the district court

should have stayed rather than dismissed Gakuba's civil-rights claims." (citations omitted)); *accord Esquibel v. Brian Williamson*, 421 F. App'x 813, 816 (10th Cir. 2010); *Rhoden v. Mayberg*, 361 F. App'x 895, 896 (9th Cir. 2010) (mem.).

But, insofar as a plaintiff may seek damages, "*Younger* is not applicable to claims for damages." *Boyd v. Farrin*, 575 F. App'x 517, 519 (5th Cir. 2014) (per curiam) (citing *Lewis v. Beddingfield*, 20 F.3d 123, 125 (5th Cir. 1994)); *accord Jones v. Prescott*, 702 F. App'x 205, 209 (5th Cir. 2017) (per curiam).

Nevertheless, "a court should stay proceedings in a [civil] case brought by a [criminal defendant awaiting trial] until the related pending criminal case is resolved." *Gross v. Normand*, 576 F. App'x 318, 319 (5th Cir. 2014) (per curiam) (citing *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995)); *see Mackey*, 47 F.3d at 746 ("At this point[– post-arrest but pre-conviction –]it is simply premature to determine whether or not Mackey's damage claims are barred under *Heck[ v. Humphrey*, 512 U.S. 477 (1994)].... [So, t]he court may – indeed should – stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."); *Anderson v. Galveston Cnty. Dist. Clerk*, 91 F. App'x 925, 2004 WL 75452, at *1 (5th Cir. Jan. 14, 2004) (per curiam) ("Anderson's complaint, given its most liberal construction, sought damages for the denial of his Sixth Amendment right to a speedy trial. A determination that Anderson's Sixth Amendment right to a speedy trial was violated would necessarily implicate the invalidity of his conviction, and Anderson has not shown that his conviction has been overturned or otherwise declared invalid." (citing

*Heck*, 512 U.S. at 486-87)).

## Discussion

Mendez was arrested by Carrollton, Texas police for possession of more than 4 but less than 5 ounces of marijuana; he was indicted by a Dallas County grand jury; and his prosecution is still pending. *See State v. Mendez*, No. F22-12434 (Crim. Dist. Ct. No. 3 of Dall. Cnty., Tex.); *cf. Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (per curiam) (under Federal Rule of Evidence 201, a district court may "take judicial notice of the state court's orders, final judgment, and docket as matters of public record attached to the motion to dismiss" (citations omitted)).

Through his response to the show cause order, Mendez argues that the civil rights violation he asserts – that his removal from the Dallas County Pretrial Intervention Program ("PTIP") amounted to unlawful retaliation, in violation of the ADA – does not interfere with the pending state criminal matter. *See* Dkt. No. 43 ("The alleged retaliation and exclusion occurred after program acceptance and is not dependent on the outcome of the state charges. Relief sought here – policy reform, restoration of ADA-compliant access, and damages for the federal injury – cannot be awarded in the state forum.").

The County responded, agreeing with the Court that this case should be stayed and pointing out that, while it "recognizes that the Court must accept all well-pleaded facts as true," it disagrees with Mendez's assertion that he was removed from the PTIP program, because he was never accepted into it. *See* Dkt. No. 44.

Regardless, as the County also raises, Mendez appears to bring civil rights claims that are at least related to his acceptance into, or participation in, a pretrial intervention or diversion program while the related criminal prosecution is ongoing. *See id.*; *see also* https://www.dallascounty.org/government/district-attorney/restorative-justice/ (last visited Aug. 29, 2025) (introducing the office's Felony Pre-Trial Diversion Programs by explaining that the Dallas County District Attorney "recognizes that not all cases and not all circumstances are the same. Using a validated risk/need assessment tool allows some cases to be referred to the Pre-Trial Specialty Courts or for Pre-Trial Intervention Agreements. We can identify the roots of problems and address the underlying reasons why someone may have committed a crime to help that person get back on track."); *Haven v. Dickerson*, Civ. A. No. H-09-647, 2010 WL 11652408, at *8 (S.D. Tex. Oct. 26, 2010) ("In Texas, the State and a criminal defendant may enter into a written agreement pursuant to which the 'State agrees to dismiss the case if the defendant performs certain conditions within a specified period of time.' Known as a pre-trial diversion agreement, this arrangement requires a continuance of the trial to a future date in order to allow the defendant time to comply with the prescribed conditions. If the defendant successfully has fulfilled the conditions by the new trial date, the trial court grants the State's motion to dismiss the pending charges; if not, the case proceeds to trial." (quoting then citing *Fisher v. Texas*, 832 S.W.2d 641, 643, 644 (Tex. App. – Corpus Christi 1992, no pet.))), *rec. adopted*, 2010 WL 11652395 (S.D. Tex. Nov. 16, 2010).

And, so, allowing this case to proceed at this time would interfere with an ongoing state judicial proceeding in which the State has an important interest – a criminal prosecution – and during which Mendez will have an adequate opportunity to raise his ADA discrimination claim, to the extent that he argues that he was wrongfully excluded from a pretrial diversion program, which would appear to be an alternative to a traditional felony prosecution. *Cf. Gould v. North Dakota*, No. 4:14-cv-018, 2014 WL 1406437, at *4 (D.N.D. Apr. 10, 2014) ("This court lacks the authority to order pretrial diversion under any circumstances. As for an order directing release from pretrial custody, it is difficult to envision a circumstance where a federal court would conclude that it would be justified because of the policy of non-interference in state-court criminal proceedings. In any event, it would take an extreme circumstance of an ongoing violation and no other remedy being available, which Gould has not established by his pleadings exists here." (citation omitted)).

And, to the extent that Mendez correctly argues that he will not be able to obtain civil relief under the ADA through the criminal prosecution, that's not the Court's current concern. Instead, as set out above, it's whether the ADA civil claims will interfere with the ongoing state prosecution. And, to be sure, once that proceeding concludes, Mendez will be able to resume prosecuting this lawsuit, as nothing in this order dismisses his claims, as explained below.

## Conclusion

This case is therefore STAYED AND ADMINISTRATIVELY CLOSED.

But nothing in this order shall be considered a dismissal or disposition of this

case, as "[t]he effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket; i.e., administratively closed cases are not counted as active." *Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) (citation omitted).

Even so, the United States District Clerk is instructed to submit a JS-6 form to the Administrative Office, thereby removing this case from the statistical records.

And the Court instructs Plaintiff Jason Mendez (1) that he must file a motion to reopen the case within 60 days after entry of judgment in the applicable state criminal court case and (2) that the failure to do so may result in the dismissal without prejudice of this case for failure to prosecute and/or comply with an order of the Court. *See* FED. R. CIV. P. 41(b).

SO ORDERED.

DATED: August 29, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE